Argued and submitted May 5, peremptory writ to issue June 7, 1983

STATE ex rel CITY OF EUGENE,
*Plaintiff-Relator,*

*v.*

WOODRICH,
*Defendant.*

(TC 16-82-08260; SC 29275)

665 P2d 333

Timothy Sercombe of Harrang & Swanson, Eugene, argued the cause and filed brief for plaintiff-relator.

Thomas B. Russell of Husk, Gleaves, Swearingen, Larsen & Potter, Eugene, argued the cause and filed brief for defendant.

Before Lent, C.J., Linde, Peterson, Campbell, Carson and Jones, JJ.

LINDE, J.

## LINDE, J.

By petition for a writ of mandamus the City of Eugene brings to this court the question whether a circuit court may deny or delay an order of immediate possession of land, when the city has brought an action to condemn the land and has deposited the estimated compensation with the circuit court. The course of the proceedings presents issues of mandamus procedure in this court interrelated with events in the condemnation action in the circuit court.

The city filed its petition on January 17, 1983, and we issued an alternative writ on February 25. The writ recited the following facts.

In July 1982, the city by ordinance declared the necessity to acquire property outside the city to be used "at the earliest possible date" for sewers and facilities for the disposal of seasonal industrial wastes. On October 4, 1982, the city filed in the circuit court a condemnation action to acquire fee simple title to 47.08 acres belonging to Chester A. Swenson and others, moving also for an order to interested parties to show cause why the city should not be granted immediate possession and depositing $141,000 as estimated just compensation with the clerk of the court. The owners objected to the city's demand for immediate possession. They asserted that the city's proposed use of the land would be unlawful for two reasons: first, because the land is zoned for exclusive farm use and the proposed use is not permissible under the governing statute, and second, because certain required permits had not been and might not be issued. After hearings on the city's motion and the owners' objections, the circuit judge, defendant in the present proceeding, denied the city's motion on the grounds that there was no necessity for immediate occupation because required permits had not been obtained, and that proof of such necessity for immediate occupation would be required by "due process."[1]

---

[1] The city captioned its motion as one for "immediate occupation" and the defendant's ruling uses that phrase. The relevant statute, ORS 35.265, refers to "immediate possession." The two terms may not be interchangeable; in the following section, ORS 35.275, the legislature used the words "occupy" and "occupation" with respect to a corresponding motion by a private condemnor.

By "due process," we assume the judge meant standards required by the 14th Amendment of the United States Constitution.

Defendant moved to dismiss the alternative writ, asserting that plaintiff had an adequate remedy by appeal from the circuit court's order. We deal with that contention below. At the same time, the city answered the writ, admitting the factual allegations but denying those alleging legal implications therefrom.

Subsequently, on March 31, 1983, defendant filed a second motion to dismiss the alternative writ on the ground that later developments in the circuit court action "have caused the underlying issues in the instant mandamus proceeding to become moot." These developments, according to a supporting affidavit, were that on March 4, the city obtained a permit for its proposed facility from the state's Department of Environmental Quality (DEQ); on March 10, the city filed a renewed motion for immediate occupation; and after a hearing at which the landowners renewed their objection that the proposed use was an unlawful land use, the circuit court on March 23 granted the city's motion subject to a stay pending a decision by the Land Use Board of Appeals (LUBA) whether LUBA had jurisdiction to stay the DEQ permit.[2]

The city opposed the second motion to dismiss, arguing that the defendant's stay of his order of immediate occupation in fact kept the city out of possession, and that even if the issue made by the alternative writ was moot, it

---

[2] The March 23 bench ruling provides:

"Plaintiff's motion is granted, subject to a stay of the immediate occupation requested pending resolution of stay of the DEQ decision by LUBA, with leave to defendants to renew stay by the Circuit Court in the event LUBA should decide it has no authority to stay the DEQ decision."

On April 8, after the motion to dismiss had been filed, the defendant-judge signed an order:

"This matter coming before the court on Motion for Immediate Occupation of the Premises filed herein by the City of Eugene, . . . .

"IT IS ORDERED that Plaintiff's Motion for Immediate Occupation of the Premises is hereby granted, subject to a stay of the immediate occupation requested pending resolution of stay of the decision by the Department of Environmental Quality (DEQ) to issue the water pollution control permit number 3653, dated March 4, 1983, by the Land Use Board of Appeals (LUBA), with leave to Defendants to renew stay by the circuit court in the event LUBA should decide it has no authority to stay the DEQ decision."

Def. Br. at Ab-5.

should nevertheless be decided as an issue of public interest for other cases.[3]

## I.  *Appealability.*

■      Defendant's assertion that the city might have appealed the order denying it immediate possession is said to be implied by the opinion in *City of Portland v. Anderson,* 248 Or 201, 432 P2d 1020 (1967). That decision denied landowners an appeal from an order of immediate possession because it was not a final judgment within ORS 19.010; but the opinion added a caveat that if an owner contested the government's right to condemn and showed that the property would be irrevocably damaged, the order might be appealable under ORS 19.010(2)(a) as an "order affecting a substantial right, and which in effect determines the action or suit so as to prevent a judgment or decree therein."[4] Here the order denied the city immediate possession of the property it wants. There is no allegation that anyone is about to render the property irrevocably unfit for the city's intended use. Whatever might be the case if a condemner sought to appeal under ORS 19.010(2)(a) because denial of immediate possession foreclosed the proposed use and thus prevented a judgment in the condemnation action, the city makes no such claim. Some claim of urgency may be implicit in the motion for immediate possession itself, but not necessarily to the extent that a denial will effectively terminate the action before judgment. We decline to dismiss the alternative writ on this basis.

---

[3] Although decisions cited by defendant for the latter point have recognized that the court may do this, at least if a case remains within the "judicial power" granted by Or Const art VII (am), § 1, *cf. Oregon Medical Assoc. v. Rawls,* 281 Or 293, 574 P2d 1103 (1978), the court has not in recent years been receptive to the invitation to decide moot issues. It cannot be presumed that unless courts insert themselves into legal questions of "public interest," no one else can deal with such legal questions. *See also State ex rel Mult. Cty. ESD v. Dooley,* 295 Or 138, 664 P2d 417 (1983).

[4] No claim is made that the proceeding for immediate occupancy is a "special statutory proceeding" within the meaning of ORS 19.010(4).

Under the statutes in effect at the time of *City of Portland v. Anderson, supra,* an appeal from a condemnation judgment would not necessarily deny the condemner the right to take possession and begin to use the property. *See* ORS 35.120 (1967), 366.380(8) (1967) (repealed 1971 Or Laws ch 741).

## II. *Mootness.*

■ We also agree with the city's contention that the present mandamus proceeding is not mooted by the city's second motion for immediate possession and the defendant's different order thereon after we issued the alternative writ. If the city demanded to be placed in immediate possession of the property and has not yet received an order with that immediate effect, neither the underlying controversy nor the city's disagreement with defendant in this proceeding has disappeared. The problem, rather, is one of the present state of the proceedings under the terms of the alternative writ, and its disposition depends on the burden of pleading claims and defenses in mandamus proceedings. We hold that the alternative writ sufficiently alleges facts giving rise to a nondiscretionary duty of defendant to grant the city immediate possession of the property, allegations that entitle the city to a peremptory writ in the absence of an affirmative defense that the city could not legally put the specific property to the specific "public use" for which alone the law under which the city acts authorizes the condemnation. No such affirmative defense to the writ has been presented.

The alternative writ of mandamus plays the role of the complaint in a civil action. It "shall state concisely the facts, according to the petition, showing the obligation of the defendant to perform the act, and his omission to perform it . . . ." ORS 34.150. The defendant "may show cause by motion to dismiss or answer to the writ, in the same manner as to a complaint in an action." ORS 34.170. The pleadings "have the same effect and construction, and may be amended in the same manner, as pleadings in an action." ORS 34.190. After permissible motions and further pleadings, "the issues joined shall be tried, and the further proceedings thereon had in like manner and with like effect as in an action." *Id.* In short, the rules of procedure relating to actions at law apply to mandamus proceedings.

The present alternative writ alleges the city's decision, by ordinance, to acquire property outside the city for the construction of sewers and waste disposal facilities. It alleges the city's action to condemn the specific property in question, its motion for an order to show cause why it should not be granted immediate possession, its payment of estimated just

compensation, hearings on the order to show cause, and defendant's failure "to perform his statutory duty and issue an order placing Plaintiff in possession of the real property Plaintiff is appropriating." These allegations suffice as a "plain and concise statement of the ultimate facts constituting a claim for relief," ORCP 18A., and defendant does not contend otherwise.

The alternative writ also contains paragraphs alleging defendant's rulings and order with respect to permits to construct the wastewater facility, permits that had not been issued before the date of the alternative writ. These allegations may be superseded by the subsequent developments reported in defendant's second motion to dismiss and supporting affidavit, and not disputed by plaintiff. Nevertheless, whether or not the proper label for defendant's point is "mootness," the alternative writ retains all the elements for a claim that defendant still fails to perform his "statutory duty" to place the city in immediate possession of the property. We turn to an examination whether anything before us presents a defense.

### III. The defense of illegality.

■ The parties disagree whether a court in a condemnation action may ever examine the legality of the intended public use of the property before granting a public condemner's demand for immediate possession. For its claim that a condemnation court has no such authority the city relies on two sections of the General Condemnation Procedure Act, ORS chapter 35, sections 35.265 and 35.275. Section 35.275 deals with applications by a "private condemner"[5] for an order to occupy and make use of the property to be condemned before the condemnation action is completed. The section requires the court to determine the reasons for requiring speedy occupation, to give consideration to the public interest involved and the protection of the owners' interests, and to impose protective provisions such as a deposit of funds toward just compensation or a surety bond. ORS 35.275(2), (3). The section dealing with immediate possession by a public condemner, ORS 35.265, contains no similar directives to the

---

[5] " 'Private condemner' means a private corporation that has the power to exercise the right of eminent domain." ORS 35.215(4).

court. It speaks only of depositing estimated just compensation with the clerk of the court when "immediate possession of the property is considered necessary by the public condemner."[6] From this difference, the city argues that the legislature intended the court to grant a public condemner immediate possession upon the deposit of the required fund without further inquiry into the necessity or propriety of the demand. Although the taking must be for a public use, according to the city this means only that the use qualifies as "public" and is of a kind for which the public condemner has the power of eminent domain.

Defendant, to the contrary, contends that a taking of the property for a use which is forbidden by law cannot be a taking "for public use" within the constitutional bounds of eminent domain, and that a taking beyond those constitutional bounds cannot give rise to a necessity for immediate possession.[7]

The problem underlying this dispute about the preconditions for immediate possession is neither new nor peculiar to Oregon law. It was less likely to arise when there were few legal restraints on the uses of property, once the use for

---

[6] ORS 35.265:

"(1) When a public condemner commences an action for the condemnation of property and immediate possession of the property is considered necessary by the public condemner, a fund shall be created in the amount estimated to be the just compensation for the property and placed in the hands of the treasurer of the public condemner for deposit with the clerk of the court wherein the action was commenced, for the use of the defendants in the action.

"(2) When the public condemner is a state agency and immediate possession of property is considered necessary by the agency, the agency shall certify to such facts and authorize an advancement out of funds available to the agency of the amount estimated by the agency to be just compensation for the property. Upon such certification and authorization, a warrant shall be drawn in favor of the clerk of the court in the amount authorized.

"(3) Upon the deposit in court by the public condemner of the estimated amount of just compensation as provided by subsections (1) and (2) of this section, no interest shall be allowed thereon in any final judgment."

[7] Or Const art I, § 18:

"Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation; nor except in the case of the state, without such compensation first assessed and tendered; provided, that the use of all roads, ways and waterways necessary to promote the transportation of the raw products of mine or farm or forest or water for beneficial use or drainage is necessary to the development and welfare of the state and is declared a public use."

which it was condemned was within the eminent domain authority of the condemner at all. The coming of farreaching land use and environmental regulations makes the problem more acute. Those responsible for public projects often cannot wait to assemble property or to begin preliminary work until every legally required permit or other approval for its execution has been secured, perhaps from several different governmental agencies. Indeed, on occasion they may not be able to obtain required approval or financing without first securing necessary property. Some private owners, on the other hand, resist sacrificing their property, perhaps to needless destruction, if the project not only may be abandoned in practice, but if at the time of the taking it cannot legally be carried out.

Cases from other jurisdictions serve to illustrate the problem. In *Seadade Industries, Inc. v. Florida Power & Light Co.*, 245 So2d 209 (Fla 1971), Seadade resisted condemnation of its property for a canal to discharge heated water into Biscayne Bay on the grounds that this discharge would violate local ordinances, state laws, and federal regulations and did not have the required approval of any of five different agencies. The Supreme Court of Florida recognized that the utility company there seeking condemnation could not demonstrate "necessity" for taking land which it might not be allowed to use, but that it would be "unreasonable" to delay a start on the canal until all permits were granted. The court therefore required the condemner to show, first, a reasonable probability that the regulations and permit requirements would be satisfied, and second, that condemnation in advance of obtaining the required approval would not result in irreparable harm to the resources protected by those requirements. 245 So2d at 214-15.

In a Kansas case, *Concerned Citizens, U., Inc. v. Kansas Power & L. Co.*, 215 Kan 218, 523 P2d 755 (1974), a proposed condemnation of land for a complex of power plants, which was dependent on obtaining various permits, was claimed to conflict with the existing agricultural zoning of the proposed site. Although the Kansas court suggested that the conflict between the county's delegated power to zone and the utility's delegated power to condemn might require legislative resolution, it held that condemnation did not depend on prior rezoning for the proposed use, which the utility could initiate only as an "owner" of the property. Applying the formula that

the condemner's decision to take could be tested for "abuse of discretion," the court held that "the decision of KPL must be based upon a reasonable probability that the construction and operation of this energy center will comply with all applicable standards and meet the requirements for the issuance of all necessary permits, state and federal." 523 P2d at 769. In a third controversy over a power generating plant, *Falkner v. Northern States Power Co.*, 75 Wis2d 116, 248 NW2d 885 (1977), the Wisconsin court similarly stated the test to be whether the condemner had a "reasonable probability" of meeting all requirements for its project and could "reasonably expect to achieve its public purpose." 248 NW2d at 893.

These cases differ legally insofar as they involved private rather than governmental condemners, were decided under different statutes, and the latter two were suits to enjoin the condemner rather than defenses to the taking. In *Mann v. City of Marshalltown*, 265 NW2d 307 (Ia 1978), however, the Supreme Court of Iowa followed the Wisconsin court's *Falkner* opinion in a suit to enjoin a city's condemnation of land for airport expansion that was alleged to violate an existing zoning ordinance. The court held that the city's claim of necessity could be challenged for "fraud, oppression, illegality or abuse of power or discretion," if the opponents could show that the city could not reasonably expect to achieve its public purpose. 265 NW2d at 315. But as we have said, we cite these cases as illustrations of the problem, not as authority on the law of this state.

Some decisions of this court, antedating the enactment of the General Condemnation Procedure Act, also recited the "fraud, bad faith, or abuse of discretion" formula as a limit on judicial review of a condemner's finding that it was necessary to take specific property for a public use. *See Moore Mill & Lumber Co. v. Foster*, 216 Or 204, 236-237, 336 P2d 39, 337 P2d 810 (1959), *Port of Umatilla v. Richmond*, 212 Or 596, 620-627, 321 P2d 338 (1958), *City of Eugene v. Johnson*, 183 Or 421, 426-429, 192 P2d 251 (1948). In the act, ORS 35.235 provides statutory "presumptions" that the property is necessary for a public use and that this use "is planned or located in a manner which will be most compatible with the greatest public good and the least private injury." The section specifies pretrial determination of challenges to this presumption only as to private condemners, ORS 35.235(4). We need

not here examine whether this makes the "presumptive evidence" in public takings conclusive or whether the old formula was meant to survive, because the focus of the present proceeding has shifted away from defendant's view of "necessity." The parties disagree about a different issue, whether judicial review not only of "necessity" but also of legality is foreclosed at the stage of a public condemner's motion for immediate possession. Does the act require a court to grant a public condemner immediate possession in advance of condemnation without inquiry, not only whether acquisition of the property is necessary for an authorized use, but even whether the proposed use is unlawful? The city asserts that the act does so; defendant contends that it does not and could not without raising serious constitutional doubts.

We note first that the section on which the city relies, ORS 35.265, does not answer the question. It prescribes what procedures should occur within the condemning agency in order to obtain funds for the estimated just compensation to be deposited with the clerk of the court.[8] It does not address what thereafter occurs in the court. This requires further examination.

The General Condemnation Procedure Act emerged from a long and complex history which need not be traced in detail here. The background of the earlier statutory and decisional law that furnished the impetus for revision and the original draft of the act are set forth in an article by its drafter in Gearhart, *Condemnation Procedures in Oregon,* 46 Or Law Rev 125 (1967). With respect to the question of immediate possession, the statutes existing in 1965 authorized state and local agencies taking land for various specified purposes to enter the land and begin the proposed project once the condemnation action was commenced.[9]

---

[8] We use the word "should" so as to imply no opinion as to whether a court may look behind a deposit of funds to see how the condemner raised them, or whether a home rule city or county might obtain funds by a different procedure.

[9] Former ORS 223.110 and 223.115 (1969) (cities), 366.390 (1969) (state highways), 368.280 and 368.285 (1969) (county roads), 526.188 (1969) (state forester). All except the county road procedure were repealed by the General Condemnation Procedure Act, 1971 Or Laws, ch 741, which made ORS ch 35 the exclusive condemnation procedure. ORS 35.375. County road procedure was repealed by 1981 Or Laws, ch 153, which authorized counties to use ch 35 proceedings. ORS 203.135, 368.096(1)(c). Other agencies were authorized to use ORS 35.050 and 35.060 (1969), the predecessors of ORS 35.275. Gearhart, 46 Or Law Rev at 159-60.

The draft revision introduced in 1965 proposed to place all condemners under the judicial procedures for immediate occupation that ORS 35.275 and its predecessors have provided for private condemners.[10] No bill was enacted at that session. A bill drafted by a committee of the Oregon State Bar and introduced but not enacted in the 1969 session would have distinguished between public and private condemners, authorizing any public condemner after the commencement of proceedings to enter the property "and make use thereof for the purposes for which the same is being appropriated." HB 1519, § 9, 55th Or Leg Assemb, Reg Sess (1969). The 1971 bill that became law initially contained the same provision. HB 1456, § 9, 56th Or Leg Assemb, Reg Sess (1971).[11] Section 9

---

[10] HB 1236, § 12, 53rd Or Leg Assemb, Reg Sess (1965), reprinted in 46 Or Law Rev at 163-164:

"(1) At any time after commencement of the action and before the determination of just compensation and upon notice to the defendants, the plaintiff may apply to the court for an order to occupy the property to be condemned and to make use of the property for the purposes for which it is being appropriated.

"(2) At the hearing on the motion, the court shall determine the reasons for requiring a speedy occupation. The court shall grant the motion if, giving consideration to the public interest involved, it finds that the interests of the owners will be adequately protected. The court may make such provisions or orders as necessary so that the advance taking or an advance payment, as provided in subsection (3) of this section, will not be prejudicial to either party.

"(3)(a) If an order to occupy the property is granted, it may also require the plaintiff to deposit with the court either such sum as the court finds reasonable on account of just compensation to be awarded or to deposit a surety bond in an amount and with such surety as the court may approve. The surety bond shall be conditioned to the effect that plaintiff shall pay to the owners of the property to be condemned just compensation for the property taken or restitution, if any, and costs, disbursements, expenses and reasonable attorney fees as finally determined.

"(b) After an order to occupy is entered, if it appears necessary in order to protect the interests of the owners of the property, the court at any time may require plaintiff to deposit with the court an additional bond or sum on account of just compensation to be awarded.

"(c) Evidence as to the finding of the court regarding the amount of such bond or deposit shall not be admissible at the trial of just compensation.

"(4) If the plaintiff occupies the property under this section, it shall not be entitled to abandon the action except as provided in subsection (1) of section 22 of this 1965 Act. The plaintiff shall proceed with all reasonable diligence to carry the condemnation action to final judgment."

[11] HB 1456, § 9, 56th Or Leg Assemb, Reg Sess (1971):

was deleted by the Senate Judiciary Committee, but the reasons do not appear from the legislative records. The committee minutes show that Senator Yturri voiced some unspecified opposition to the section. Committee tapes suggest that this occurred in the context of testimony proposing that landowners should receive payment when the condemner takes possession, but this would not explain a decision to do away with the public condemner's powers to secure immediate possession altogether. The next section of the bill, section 10, extended the requirement of depositing estimated just compensation from the State Highway Commission and the State Board of Forestry to public condemners generally. Engrossed HB 1456, § 10 (1971), now ORS 35.265(2).

Nevertheless, the effect of deleting section 9 of HB 1456 was to make no provision at all in the General Condemnation Procedure Act governing claims and challenges to immediate possession by public condemners. When the legislature repeals existing provisions for immediate possession and deliberately removes the relevant successor provision from the revised law, for whatever reason of policy or misunderstanding, it would be plausible to conclude that the new act left public condemners with no authority to compel immediate possession. We might well draw that inference if the act in the next section of HB 1456, section 10, had not retained the provision for funding and depositing estimated just compensation when a public condemner considers it necessary to obtain immediate possession of the property, the provision now found in ORS 35.265, *supra* n. 6.

Against this ambiguous legislative background, we assume for purposes of argument defendant's position that he would not be obliged to grant the city immediate possession of property if the eventual use of the property for the sole public

---

"Section 9. At any time after proceedings shall have been commenced to acquire any property, a public condemnor may enter into possession of any or all of the property and make use thereof for the purposes for which it is being appropriated. In any case, when the public condemnor enters upon any property as provided by this section, the public condemnor shall proceed with all reasonable diligence to carry the action to a final judgment. When the amount of compensation for the property is finally ascertained, judgment therefor shall be entered. When the judgment becomes final, the amount thereof shall be paid promptly."

use for which the city may acquire it is unlawful.[12] We doubt that upon a deposit of just compensation a court must grant the City of Salem, for instance, an order of immediate possession of the State Capitol for an otherwise legitimate public use without determining whether the building was lawfully available for that purpose, though the city's argument seems to extend to this. We further assume that "unlawful" differs from "not presently necessary" in that "unlawful" refers to a legal obstacle that requires a change in a general law, such as a statute, a regulation, or a local ordinance, charter, or general plan, rather than only a permit, approval, or other discretionary action or factual judgment concerning the specific project. It is one thing for a court to estimate the procedural and evidentiary obstacles and the eventual outcome of a fact-based determination; it is quite another to speculate on a condemner's chances of obtaining a change in legislative or regulatory policy.

Arguably, then, if an opponent persuades a court that a proposed use is unlawful in this sense, the court may deny the condemner immediate possession for lack of a lawfully possible "public use" of the property. This may require a court in a condemnation case to determine the legality of a proposed land use, a determination otherwise assigned to LUBA, for the limited purposes of the condemnation case before it, though the court's determination would not bind LUBA in exercising its own responsibilities. While this procedure departs from normal rules of primary agency jurisdiction, such a policy favoring speedy decision is implicit in providing any procedure for immediate possession.

In the present mandamus proceeding, however, this court has no basis for concluding that such a showing was made to the defendant judge. There is an allegation, not essential to the petition or to the writ, that the landowners objected in the circuit court that the proposed use would violate the zoning of the property, but nothing in the writ or in the responding pleadings and affidavits in this court asserts that such a legal obstacle was or could be established. On the record before this court, we cannot hold that defendant had a

---

[12] In this case the city seeks to condemn land outside its own boundaries under the authority of and for the purpose specified in ORS 242.020 and 454.215(1). The case does not involve a city's home rule power to define its authority to take property.

sufficient reason to deny the city's demand for an order of immediate possession.

## IV. *Conclusion.*

To recapitulate: The alternative writ of mandamus issued upon the city's petition alleges ultimate facts sufficient, if not controverted or met by an affirmative defense, to make out the city's claim to the relief it seeks. The city did not have a remedy by appeal.

Defendant's answer denied only the legal implications of the facts alleged in the writ, which appear to be undisputed. Defendant's second motion to dismiss and supporting affidavit recited subsequent developments which caused defendant to stay an order of immediate possession pending a jurisdictional decision by the Land Use Board of Appeals. In their legal arguments, the parties dispute whether a city is entitled to immediate possession of property for a use that in principle is within the city's condemnation authority but that cannot lawfully be carried out at the time of the demand for immediate possession. Defendant does not, however, present an affirmative defense that the use for which the city demands immediate possession actually would be unlawful, and we can neither infer nor decide such a defense from the materials before us in this mandamus proceeding. Even assuming defendant's legal premises, therefore, on the record before this court the alternative writ must be made peremptory.

Peremptory writ to issue.