Argued and submitted November 17, 1995, reversed and remanded April 17, petition for review denied September 3, 1996 (324 Or 176)

STATE OF OREGON,
by and through its
DEPARTMENT OF TRANSPORTATION,
*Appellant,*

*v.*

SCHROCK FARMS,
an Oregon corporation,
and Dean Schrock,
*Respondents.*

(90-0148; CA A86476)

914 P2d 1116

John T. Bagg, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Edward F. Schultz argued the cause for respondents. With him on the brief was Weatherford, Thompson, Quick & Ashenfelter, P.C.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

### WARREN, P. J.

The Oregon Department of Transportation (ODOT) appeals from a judgment that dismissed its action to condemn approximately 12 acres of land that defendants own (the land). ODOT needed the land in order to realign a portion of State Highway 34 between Corvallis and Lebanon. We reverse.

The land runs through one of defendants' fields; the realigned highway divides that field into two sections, creating a new land parcel. The entire field is in an Exclusive Farm Use (EFU) zone; at the time, the applicable statute did not permit new or relocated highways in an EFU zone if the result would be to create new land parcels. ORS 215.283-(1)(L), (2)(p), (q), (r). Linn County's comprehensive plan also treats the area as agricultural, making a relocated highway impermissible, at least without an appropriate exception. ODOT believed that it would be possible to build the highway after obtaining an exception to Goal 3, the Agricultural Lands Goal. Because, under the relevant county ordinances, ODOT could not apply for the necessary plan changes unless it had an ownership interest in the land, it first sought, unsuccessfully, to purchase the land from defendants and then filed this case to take the land by condemnation.

When ODOT filed this case in January 1990, it also deposited the amount that it estimated to be just compensation with the clerk of the court in order to obtain immediate possession. *See* ORS 35.265. It then sought and received an exception to Goal 3 from Linn County to permit it to build the highway. Without objection from defendants, it took possession of the land and built the highway.

Despite permitting ODOT to take possession and build the highway, defendants asserted that the land use regulations did not permit using the land for highway purposes and that ODOT, therefore, did not have the power to condemn it. In support of that position, they[1] challenged the county's Goal 3 exception before the Land Use Board of Appeals (LUBA).[2] In its first decision, LUBA remanded the

---

[1] Vernon Schrock was a party to the LUBA proceedings but is not one of the defendants in this case.

[2] The court stayed the condemnation case during the LUBA proceedings.

case on the ground that the exception was inadequate because the county also needed to incorporate the change into its comprehensive plan. Defendants were not satisfied with that conclusion and sought judicial review. We held that LUBA erred by failing to consider their argument that the road would conflict with the EFU zoning for the area. *Schrock Farms, Inc. v. Linn County*, 117 Or App 390, 844 P2d 253 (1992). On remand, LUBA held that the realignment was contrary to ORS 215.283 and that the Goal 3 exception, unaccompanied by a zone change, did not obviate the need to comply with the statute. ODOT sought review, and we affirmed. *Schrock Farms, Inc. v. Linn County*, 121 Or App 561, 855 P2d 648 (1993).

After these decisions, the legislature, at ODOT's request, adopted ORS 215.283(3)(a), which permits roads, highways, and other transportation facilities in EFU zones, even if they are not otherwise allowed, subject to the approval of the appropriate governing body and the adoption of an exception to the agricultural lands and any other applicable goals.[3] After our second decision, and after this legislative change, defendants moved for summary judgment on the ground that the road was not a legal use of the land and that ODOT, therefore, did not have the authority to take it by condemnation. The court granted the motion, dismissed the case, and awarded attorney fees to defendants.

The controlling question on appeal is whether ODOT has authority to condemn property on which it intends to build a highway if, at the time that ODOT acts, the applicable zoning and other land use regulations do not permit the building of the highway. We conclude that ODOT has that authority.

ORS chapter 35 establishes the procedure for taking property by eminent domain, but the authority for the condemning entity to act must come from some other law. *See*

---

[3] The legislature originally amended the statute in Oregon Laws 1993, chapter 529, section 2. That act contained an emergency clause and was effective on July 30, 1993. The legislature thereafter repealed that provision and replaced it with the identical language in Oregon Laws 1993, chapter 792, sections 14, 14b, which was effective November 4, 1993. The net effect of these actions is that ORS 215.283(3)(a) has been in force continuously since July 30, 1993.

ORS 35.235(1). ODOT asserts that its authority to take the land arises either from ORS 366.320(1), which authorizes it to condemn property for "rights of way deemed necessary for all primary and secondary state highways," or from ORS 366.340(4), which authorizes it to acquire property by eminent domain for any use or purpose that it deems necessary to carry out the purposes of the State Highway Act.

Defendants respond that the statutes do not permit ODOT to condemn property for an unlawful use and that a use that would violate existing statutes and regulations is unlawful. They rely on *State ex rel City of Eugene v. Woodrich*, 295 Or 123, 665 P2d 333 (1983), in which the Supreme Court suggested that a court could deny a condemnor immediate possession of the property if the proposed public use would be "unlawful" in the sense of requiring a change in a general law, such as a statute, regulation, local ordinance, or general plan. 295 Or at 136.

The difficulty with defendants' position is that *Woodrich* involved the issue of immediate possession, while in this case ODOT wants the land in order to seek changes in the applicable law in a way that would make the proposed use proper. The Supreme Court did not suggest that it was improper for the condemning agency to *file* a condemnation action before the applicable regulations permitted the procedure; indeed, it appears to have recognized that it might be necessary to do so in order to obtain the changes that would make the project permissible. *See Woodrich*, 295 Or at 131 ("[t]hose responsible for public projects often cannot wait to assemble property or to begin preliminary work until every legally required permit or other approval for its execution has been secured * * *"). Rather, the court's concern was that the owner not have to part with possession, risking the possible destruction of its property, until it was clear that the condemning agency would be able to use the property for the intended purpose. *Id.* That is not a concern in this case, as defendants did not oppose ODOT's immediate possession of the land or its construction of the highway while the case was pending.

In *Woodrich*, the Supreme Court also discussed cases from other jurisdictions that suggest that, in order to

prevail, a condemning authority must have either a reasonable probability or a reasonable expectation of gaining the permits that are necessary to use the property for the intended purpose. It did not, however, adopt such a standard as part of Oregon law. 295 Or at 131-32. Assuming that ODOT must nevertheless meet such a requirement, the record shows that it has done so. Under ORS 366.320(1) ODOT had authority to take the land for immediate highway use. Although, as LUBA and we ultimately held, its belief that it only needed to obtain a Goal 3 exception was incorrect, it could well have reasonably expected to be able to obtain all necessary approvals when it filed this action. ODOT also has authority under ORS 366.340(4) to condemn property that it "deem[s] necessary for carrying out the purposes" of the State Highway Act. Acquiring land that is not presently available for highway use in order to meet a precondition for seeking the regulatory changes that are necessary to make it available meets that standard.[4]

The trial court apparently dismissed the case because it accepted defendants' argument that LUBA's second decision, and our affirmance of that decision, conclusively established that ODOT could not lawfully build the highway in an EFU zone.[5] Assuming without deciding that that conclusion was correct when ODOT filed this case, it was wrong under the law that existed when defendants moved for summary judgment and when the court ruled on the motion. ORS 215.283(3)(a) now permits highways in EFU zones if the local government both approves and adopts exceptions to the applicable goals. That statute was in effect when defendants moved for summary judgment. The fact that ODOT actually took possession and built the highway some years before the trial court ruled, and the county's previous action in adopting

---

[4] Under this statute, ODOT would not need to show a reasonable expectation or reasonable probability of obtaining the necessary regulatory changes; its intent to seek them would suffice. The judgment could deal with problems that might arise if ODOT ultimately was unable or failed to use it for a public purpose by granting defendants the right to repurchase the land. *See* ORS 35.385(2); ORS 35.390.

[5] Even if the court were correct on that point, there is no indication that it considered whether ODOT could have successfully sought rezoning of the area in question.

an exception to Goal 3, both gave ODOT a reasonable expectation and made it reasonably probable that it will be able to comply with the new statutory requirements. ODOT therefore has authority to condemn the land under both ORS 366.320(1) and ORS 366.340(4).[6]

Reversed and remanded.

---

[6] Because of our conclusion, we do not need to consider ODOT's assignment of error concerning the amount of the attorney fees that the court awarded to defendants.