Argued and submitted January 14, affirmed July 13,
reconsideration denied August 20,
petition for review denied October 27, 1981 (291 Or 893)

NORTHWEST NATURAL GAS COMPANY,
*Respondent,*

*v.*

GEORGIA-PACIFIC CORPORATION et al,
*Defendants,*

OREGON LUMBER EXPORT COMPANY,
*Appellant.*

(No. 37092, CA 16684)

630 P2d 1326

Lloyd W. Weisensee, Portland, argued the cause for appellant. With him on the brief was Fredrickson, Weisensee & Cox, Portland.

Jeffrey M. Batchelor, Portland, argued the cause for respondent. With him on the brief were John P. Bledsoe, James H. Clarke and Spears, Lubersky, Campbell & Bledsoe, Portland.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

### THORNTON, J.

This is an appeal by defendant Oregon Lumber Export Company from a judgment entered on a jury verdict in its favor for $7,000 as compensation for 3/4 of an acre of timber property taken by plaintiff for the purpose of running a liquefied natural gas pipeline to the production plant in Yaquina Bay. Defendants Georgia-Pacific and Oregon Bank, record holders of certain interests in the property pursuant to a security agreement with Oregon Lumber Export, made no appearance at trial and are not involved on appeal. It was determined at the immediate occupancy proceeding that neither Georgia-Pacific nor the Oregon Bank had any interest which was materially affected by the determination in this case.

■ ■ Defendant raises fourteen assignments of error. Some of them are not argued in defendant's brief and are accordingly waived.[1] One other, as a result of the manner in which we decide the case, has become moot.[2] The issues which remain for decision are as follows:

1) Was defendant denied due process where the statute providing for a summary hearing to determine a condemnor's right to immediate occupancy of the premises

---

[1] Assignment 3 (allowance of testimony regarding the date pipeline construction commenced); assignment 4 (failure to produce alternate route studies at hearing); assignment 7 (striking of counterclaim for trespass); assignment 9 (denial of motion to strike testimony concerning oral negotiations for failure to produce written records of such conferences at trial); assignment 11 (exclusion of affidavit from unrelated case challenging need for liquified natural gas plant); and assignment 13 (exclusion of defendant's preferred evidence that pipeline could have been routed around the property). *Meskimen v. Larry Angell Salvage Co.,* 286 Or 87, 94, 592 P2d 1014 (1979).

[2] Assignment 10 (exclusion of testimony of feasibility of alternate routes).

We have been handicapped in our review of this case by the manner in which defendant has structured its brief. Principally, defendant has combined its argument on its assignments 1 through 5 (stemming from rulings at the immediate occupancy hearing) and assignments 6 through 13 (rulings at trial). Where two assignments of error raise essentially the same issue *(e.g.,* denial of motions for directed verdict and judgment), it is often clearer to argue them in combination. Where the assignments challenge rulings which rest on essentially different bases *(e.g.,* in this case, the constitutionality of the immediate occupancy and failure to compel production of plaintiff's corporate file on the pipeline), argument should be segregated. The hazards of not doing so are apparent in this case: parts of defendant's argument do not appear to relate to any particular assignment of error and, in some instances (n 1, *supra),* there are assignments of error on which there is no specific argument.

does not require notice to the condemnee, but defendant concedes it had actual notice of the proceeding (assignments 1 and 2)?;

2) Did plaintiff carry its burden of proving its right to immediate occupancy of the land (assignment 5)?;

3) Did defendant waive its right to a summary hearing on the necessity of the taking (assignments 6 and 8)?;

4) Was the plaintiff's corporate resolution declaring the necessity legally sufficient to raise the presumptions under ORS 35.235(3) (assignment 12)?; and

5) Did the trial court properly refuse to strike testimony of plaintiff's two expert appraisers (assignment 14)?

In 1976, plaintiff undertook construction of a 4.5 mile pipeline to connect a new liquefied natural gas plant scheduled for completion in mid-1977 to existing storage facilities. Studies were performed by plaintiff's engineering department, which, after considering three alternate routes along existing rights-of-way, recommended the route adopted, which entailed purchasing rights-of-way from several landowners, including defendant, whose 55 acre tract is traversed at two places by the pipeline. The total area taken from defendant is approximately 3/4 of an acre. Plaintiff attempted to negotiate with defendant, but no final agreement was reached.

By June 6, 1976, the date of the filing of the complaint, construction of the pipeline had progressed to the boundaries of defendant's property. On June 10, plaintiff filed a motion for immediate occupancy and an order requiring defendant to show cause why it should not be allowed. The show cause order was granted on June 14. On June 25, plaintiff filed an amended complaint, attaching the corporate resolution to build the pipeline and a letter to defendant offering $3,500 for the right-of-way. Defendant filed a plea in abatement and answer alleging *inter alia* that plaintiff had failed to consider alternate routes. Defendant also moved for a continuance because plaintiff had allegedly obstructed its discovery efforts. On June 28, the date set for the show cause hearing, defendant moved to

dismiss the proceeding on the ground that the statute authorizing immediate occupancy did not provide for notice to the condemnor. All motions and the plea in abatement were denied.

A review of the record of the immediate occupancy hearing reveals some confusion on both sides as to precisely what issues were before the court. ORS 35.275, the text of which is set out in the margin,[3] requires the trial court to determine the reasons for immediate occupancy and directs that the motion be granted if, "* * * giving consideration to the public interest involved, [the court] finds that the interests of the owners will be adequately protected." At the outset, defendant's counsel remarked, "* * * all we are doing is focusing on the very narrow preliminary right that the plaintiff here wants, and that is immediate occupancy. * * *" It appears, however, that defendant thought plaintiff's burden of proof included establishing that the route chosen was the best available route:

"I think if the Court will look at ORS 35 — the Court now is permitted to examine the purpose and the reason for

---

[3] ORS 35.275 provides:

"(1) At any time after an action is commenced to acquire any property, a private condemner may apply to the court for an order to occupy the property to be condemned and to make use of the property for the purposes for which it is being appropriated.

"(2) At the hearing on the motion, the court shall determine the reasons for requiring a speedy occupation. The court shall grant the motion if, giving consideration to the public interest involved, it finds that the interests of the owners will be adequately protected. The court may make such provisions or orders as necessary, so that the advance taking or an advance payment, as provided by subsection (3) of this section, will not be prejudicial to either party.

"(3)(a) If an order to occupy the property is granted, it may also require the private condemner to deposit with the court either such sums as the court finds reasonable on account of just compensation to be awarded or to deposit a surety bond in an amount and with such surety as the court may approve. The surety bond shall be conditioned to the effect that the private condemner shall pay to the owners of the property just compensation for the property taken or restitution, if any, and costs, disbursements and reasonable attorney fees as finally determined.

"(b) After an order to occupy is entered, if it appears necessary in order to protect the interests of the owners of the property, the court at any time may require the private condemner to deposit with the court an additional bond or sum on account of just compensation to be awarded.

"(c) Evidence as to the finding of the court regarding the amount of such bond or deposit shall not be admissible at the trial of just compensation."

the right-of-way and certainly it's a matter that the private condemner cannot avoid by coming in and trying to establish it in an immediate occupancy procedure to avoid the requirement that they justify the right-of-way * * *."

Plaintiff took the view that the only issue was whether the facts justified immediate occupancy. At one point in the hearing, plaintiff objected on relevancy grounds to defendant's motion to compel the witness (plaintiff's vice-president of engineering) to produce the file on selection and approval of the particular pipeline route, contending that defendant had the affirmative burden to show bad faith or abuse of discretion. At another point, plaintiffs objected to defendant's inquiry as to what material relating to pipeline approval had been left out of the file shown to defendant, stating that "the route is not before the Court at this time, so we are only here to determine the reason for requiring speedy occupancy." Despite its position seemingly to the contrary, plaintiff offered direct evidence by its vice-president of the route selection process and permitted a great deal of cross-examination of its witnesses on the subject without objection.

The trial court stated its conclusions as follows:

"The matter that's before me at this time is immediate occupancy. I've already ruled contrary to dismissal of this proceeding on Constitutional grounds. The question then arises: Although it's been argued by counsel for the Defendant that the appearing Defendant — and I take it really that the thrust of your argument is that the necessity and the planning and the improvement, the use and that sort of thing in [ORS 35.235] * * * gives it weight of the disputable presumption which I understand the law of this state to be evidence. And if it's evidence and is not rebutted in any way, it seems to me that I have nothing to look at then in this thing as it relates to necessity of the proposed use, planning, and location and public good and least private injury."

The trial court ordered immediate occupancy upon posting of a $5,000 bond by plaintiff.[4]

---

[4] Defendant appealed the order for immediate occupancy to the Supreme Court, which, on July 20, 1976, rejected the appeal on the ground that there was no final order. *See City of Portland v. Anderson,* 248 Or 201, 432 P2d 1020 (1967).

For reasons not entirely apparent from the record, trial in this matter was not held until October 16, 1979, before a judge other than the one presiding at the advanced occupancy proceeding. On August 8, 1979, defendant filed its first answer to the second amended complaint (which had been filed on the day of the immediate occupancy hearing), alleging that the procedures followed by plaintiff were unconstitutional because "* * * plaintiff did not use alternate available rights of way." Plaintiff moved to strike this paragraph on the ground that it was sham and frivolous. The motion was granted on September 21, 1979.

On October 5, 1979, defendant filed an amended answer alleging as an affirmative defense that the short length of time between the filing of the complaint and the request for immediate occupancy, the expedited construction of the right-of-way to defendant's boundaries, the defects in the plaintiff's pleadings and plaintiff's failure to produce all its records on route selection together

"* * * actually deprived defendant of any realistic or actual opportunity to contest whether the taking was necessary and whether the pipeline was located in a manner which would be most compatible with the greatest public good and the least private injury."

The answer also set up a counterclaim for trespass. The week before trial, defendant sent a letter to the trial court (which did not arrive until October 14, a Sunday) indicating that it envisioned a "two-stage trial," the first phase apparently to be the summary proceeding provided for in ORS 35.235(4) for challenging the presumptions set out in subsection (3) of that section.[5]

---

[5] ORS 35.235 provides:

"(1) Subject to ORS 492.100 and 758.015, whenever in the judgment of the condemner it is necessary to acquire property for a purpose for which the condemner is authorized by law to acquire property, the condemner shall, after first declaring by resolution or ordinance such necessity and the purpose for which it is required, attempt to agree with the owner with respect to the compensation to be paid therefor, and the damages, if any, for the taking thereof.

"(2) The resolution or ordinance of a public condemner is presumptive evidence of the public necessity of the proposed use, that the property is necessary therefor and that the proposed use, improvement or project is planned or located in a manner which will be most compatible with the greatest public good and the least private injury.

The trial court granted plaintiff's motion to strike the counterclaim and affirmative defense. The latter was stricken on two grounds: 1) the validity of the presumptions had been fully determined at the immediate occupancy hearing, and 2) inasmuch as defendant made no proper motion for a hearing on the presumptions between June 26, 1976, and October 14, 1979, its right to such a hearing had been waived. Thereafter, the court consistently made evidentiary rulings on the basis that the necessity for the project and availability of alternate routes were not issues at trial.

We now turn to the specific issues on appeal.

### DUE PROCESS - NOTICE

■ Defendant correctly points out that the immediate occupancy statute (ORS 35.275, *supra* n 2) does not provide for notice to the condemnee of the proceeding; it seeks instead to protect the condemnee's rights by requiring the posting of a bond or deposit of funds into court to apply toward whatever damages are eventually shown to result from the taking. Defendant conceded, however, that it had actual notice of the hearing, pursuant to the show cause procedure. Since defendant had actual notice of the proceeding, appeared and was represented by an attorney, we hold that it has no basis for complaint. *See Stroh v. SAIF,* 261 Or 117, 492 P2d 472 (1972).

### SUFFICIENCY OF PROOF OF NEED FOR IMMEDIATE OCCUPANCY

■ Plaintiff conceded that it had the burden of establishing the need for immediate occupancy. ORS 35.275(2). Eminent domain is an action at law, and the determination of that need constitutes a factual finding which is binding on us if there is any evidence of substance to support it. We conclude there is.

---

"(3) The commencement of an action to condemn property by a private condemner creates a disputable presumption of the necessity of the proposed use, that the property is necessary therefor and that the proposed use, improvement or project is planned or located in a manner which will be most compatible with the greated public good and the least private injury.

"(4) The question of the validity of the disputable presumptions created in subsection (3) of this section, if raised, shall be determined by the court in a summary proceeding prior to trial."

The pipeline was built in the summer of 1976 to connect storage facilities and a new gas plant due to come on line in mid-1977. Agreement had been reached in May, 1976, with every landowner along the adopted route except defendant, and plaintiff had cleared almost to defendant's property by the date of the immediate occupancy hearing. Evidence showed that plaintiff had rented equipment, hired crews and would sustain additional costs if compelled to discontinue the process.

## NECESSITY OF THE TAKING - SUMMARY HEARING

■  The central problem in this case derives from defendant's attempts to rebut the presumptions created by ORS 35.235(3) — 1) that the proposed use is necessary; 2) that the taking of the particular property is necessary; and 3) that the project was planned so as to maximize the ratio of public good to private harm. These presumptions arise upon the filing of the complaint and upon a showing that the condemnor attempted to agree with the property owner as to the value of the interest taken. ORS 35.235(1). ORS 35.235(4) provides that a summary hearing "prior to trial" shall be held for purposes of challenging any of the presumptions.

■  Defendant appeared at the immediate occupancy proceeding prepared to dispute at least the second of the disputable presumptions, the necessity of taking defendant's property, by showing that the pipeline route was selected without proper consideration of an alternative route along an existing pipeline easement.[6] Defendant apparently felt it was compelled to challenge the presumption at this point by a dictum in *City of Portland v. Anderson,* 248 Or 201, 203, 432 P2d 1020 (1967), that " 'the establishment of the right to condemn is a prerequisite to any

---

[6] Plaintiff's vice-president of engineering testifed as follows:

Q. "You have not answered my question. My question is: Why haven't you told us today that you considered using the Georgia-Pacific pipeline easement route as a possible easement route for the construction of your gas pipeline?

A. "We did not consider that for two reasons. One: They have a very large line in there. Two: They have periodic breaks on that pipeline which jeopardizes anything in the area including the highway."

right of possession by the condemnor,'" citing 6 Nichols, *Eminent Domain,* § 24.5, 72 (3d ed 1965). If a motion for immediate occupancy is filed on the heels of the complaint, nothing in ORS Chapter 35 requires or forbids the condemnee to challenge the rebuttable presumptions in the proceeding on that issue. Hearings on immediate occupancy may be held "any time after an action is commenced;" the hearing on the validity of the presumptions may be held at any time "prior to trial."

■■ A condemnee in defendant's position is in somewhat of a predicament, given the shortness of time for discovery and its difficult burden of rebutting the presumptions. Nothing in the statute precludes a condemnee from contesting only the issues involved in immediate occupancy and later presenting its evidence on the right to condemn the property under the circumstances, although this creates the risk to the condemnor that its right may later be successfully challenged. Logically, it is more expedient and minimizes the possibility of irreparable harm to either party to try these issues in the same proceeding. It may be that, where the condemnee gives notice of its intent to challenge the presumptions, the condemnor may not be awarded possession until the condemnee has had a reasonable chance to undertake discovery necessary to refute the presumptions.[7]

We need not decide what steps a condemnee in defendant's position has available, because we hold that it failed to raise the matter by the affirmative defense in its October 5 answer and failed to preserve the question for review otherwise. The trial court struck the affirmative

---

[7] No Oregon case has expanded on the dictum in *City of Portland v. Anderson, supra,* 248 Or at 203, that establishment of the "right" to take is a precondition to the right of possession. In *Greensboro-High Point Airport Authority v. Irvin,* 2 NC App 341, 163 SE2d 118 (1968), the court held that a condemnor could be temporarily restrained from taking immediate possession of the premises (although it otherwise qualified under the statute for such possession) where the condemnee challenged the authority to take the property and showed that immediate use by the condemnor (topping trees at 40 feet for an airspace easement) would result in irreparable harm to the landowner. In *Town of Ames v. Wybrandt,* 203 Okla 307, 220 P2d 693 (1950), it was held that the lower court had the power to delay a decision on the condemnor's right to condemn until after the commissioners had appraised damages (at which point the condemnor by statute had a right, upon payment of the amount so fixed, to immediate possession), but that the condemnee could obtain a temporary restraining order on immediate occupancy pending final determination of the right to condemn.

defense on alternative grounds: a) that the matter had been fully litigated at the hearing on immediate occupancy, and b) in any event, defendant failed to timely request a hearing on the presumptions. It is impossible to determine from the comments of the trial judge who heard the immediate occupancy motion, which are set out in the statement of facts, *supra,* whether he meant that presumptions had the force of evidence and there was no evidence to rebut them (thereby deciding the question of alternate route availability on the merits), or whether he meant that, because the only issue was the need for immediate occupancy, the question was not before the court. We resolve the ambiguity in favor of defendant. Certain of its evidence was excluded on the ground that it was not relevant to the issues of immediate occupancy. Some evidence on alternate routes came in from both parties, but there is no indication that the trial court would have allowed it over plaintiff's objection.

■     ORS 35.235(4) requires that the validity of the presumptions be determined in a summary hearing prior to trial "if raised" by the condemnee. The statute is not explicit as to how this question is to be raised. ORS 35.295 authorizes a condemnee to allege by answer "any legal defense he may have to the condemnation." Proof that there is no necessity for the taking, or that alternatives less onerous to the landowner are available, would constitute a complete defense to the action. It seems plain that this question can be raised by affirmative defense.

■ ■ Further, we see no reason to require a condemnee to request the summary hearing by motion, any more than a party alleging equitable defenses in a legal action is required to demand a separate summary hearing on those defenses. As a practical matter, it seems sensible to hold the summary hearing immediately prior to trial on the fair market value of the property, unless other factors are present (such as when a motion for immediate occupancy is filed and the validity of the presumptions can be determined at the hearing without prejudice to the condemnee's ability to carry its burden of proof).

■ ■ In holding that defendant had failed timely to request a hearing because it had to do so by motion and that

motion was not timely filed, the trial court erred. We conclude, however, that the allegations in the October 5 answer did not state a valid affirmative defense. Where there is an alternative basis for upholding a trial court's ruling, it is immaterial that we disagree with the ground articulated by the trial judge. *Allen v. The Heil Company,* 285 Or 109, 122, 589 P2d 1120 (1979); *Ashley v. Metz,* 49 Or App 1105, 1109, 621 P2d 671 (1980).

■ The affirmative defense at issue does not allege that the taking was unnecessary because alternate, less costly routes were available. It alleges that, through a concatenation of various factors, defendant was *deprived of the opportunity to litigate the matter.* Assuming this allegation is true, it does not constitute a defense to condemnation. In the simplest terms, defendant had an affirmative defense stricken with leave to plead over and responded, not with a corrected version of the prior defense, but with an allegation that striking the first defense was error. That is an argument to be made on appeal under proper assignment or to the trial court upon a motion to reconsider its original holding on the matter. Defendant does not assign error to the striking of the defense from its August 28 answer, nor to other rulings which partly formed the basis of defendant's allegation that it had no real chance to contest the presumptions on their merits (denial of a continuance and dismissal of the plea in abatement in the immediate occupancy proceeding). It follows that the so called affirmative defense in the October 5 answer was properly stricken.

## SUFFICIENCY OF THE CORPORATE RESOLUTION

■ Defendant argues that plaintiff's corporate resolution declaring the taking necessary (ORS 35.235(1),(2)) is legally insufficient because there was no evidence that the board of directors itself actually weighed alternative routes. There was testimony that plaintiff's engineering staff had studied the feasibility of several other routes, including existing rights of way held by plaintiff and other utilities. The staff recommended the route in question as the most direct, least expensive and least disruptive. A corporate board of directors is entitled to rely on the judgment of its employes in matters of this sort.

■     Defendant also argues that plaintiff's staff did not perform the necessary studies to permit a reasoned judgment on the best route for the pipeline. In substance, this argument is a challenge to the merits of plaintiff's decision that the taking maximized the ratio of public benefit to private harm. Plaintiff met its burden of proof on this matter by virtue of the presumptions in its favor.

## APPRAISERS' TESTIMONY

Defendant objected to the testimony of plaintiff's expert timber appraisers on two grounds: 1) that the appraisers in investigating similar sales in the area talked only to the buyers of the tracts, all of which were large timber companies, and 2) that their opinions were based in part on scale tickets showing the amount of timber cleared from the pipeline easement, which were not shown to defendant nor produced at trial.

■     In support of its first point, defendant cites *Coos Bay Logging Co. v. Barclay,* 159 Or 272, 79 P2d 672 (1938), for the proposition that evidence of the prices paid for similar parcels is admissible only if the sales were voluntary. That case involved evidence of prices paid for similar tracts in condemnation proceedings, where there was no voluntary seller. In this case, there is no evidence that sales were involuntary. The amounts paid in those sales were not in evidence, and the experts testified only that they considered them in formulating their opinions as to the value of the right-of-way. There is no evidence that the sales were not sufficiently similar to permit the experts to consider them.

■     As to the second ground, an expert may base his opinion upon information furnished by others and not in evidence "if the jury is informed of the source and character of the information upon which the witness draws his inferences." *State Highway Com. v. Arnold,* 218 Or 43, 69, 341 P2d 1089, 343 P2d 1113 (1959).

Affirmed.