Argued and submitted September 23, reversed and remanded December 22, 1999

## Patricia LAWRENCE,
*Petitioner,*

*v.*

## CLACKAMAS COUNTY,
*Respondent.*

## (98-132; CA A106968)

992 P2d 933

Mary W. Johnson argued the cause for petitioner. With her on the brief were Harlan E. Levy and Mary Ebel Johnson, P.C.

Michael E. Judd argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Kistler, Judge.

LANDAU, P. J.

## LANDAU, P. J.

Petitioner seeks review of a final order of the Land Use Board of Appeals (LUBA) that affirmed the denial of her application for verification of a go-kart track as a nonconforming use. We reverse and remand for reconsideration.

The following facts are not in dispute. Petitioner owns property outside of Damascus, Oregon. On that property, she maintains a single-family home, an auto repair business, and a quarter-mile-loop go-kart race track known as "Damascus Rev N' Ride." Petitioner's predecessors opened that track to public use in 1960. In 1964, the county enacted a zoning ordinance that declared the track an unlawful use. The owners continued to operate the track at least until 1968. Petitioner purchased the property in 1971 and operated the track from that date on.

Petitioner's operation of the track has generated a number of complaints from the neighboring residents and has been the subject of several enforcement actions. In 1998, in response to one of those enforcement actions, petitioner filed an application seeking verification that the track is a protected nonconforming use. The planning director denied the application. According to the director, a nonconforming use may continue as long as it is not abandoned or interrupted for more than a year. In this case, the director found, petitioner failed to establish that the track continued to operate between 1968 and 1970.

Petitioner appealed. The hearings officer permitted petitioner to submit additional evidence but stated that he would accord "considerable deference" to the director's findings and would not, in the absence of compelling reasons, allow petitioner "to bolster an appeal with evidence [she] did not submit to the Planning Director." Petitioner argued to the hearings officer that she had established that she had used the go-kart track for the preceding 10 years and that, under ORS 215.130(10)(a), there was a rebuttable presumption that the use was continuous beyond that period. According to petitioner, the rebuttable presumption had the effect of shifting the burden to the county to establish, by a preponderance of the evidence, that the use was not continuous. The

hearings officer rejected petitioner's argument, holding that the county could rebut the presumption with less than preponderating evidence. The hearings officer then carefully reviewed the record and concluded that there was "substantial evidence" to support the director's determination that the presumption had been rebutted. In particular, the hearings officer noted that a single witness testified that the go-kart business was discontinued for some unspecified period of time during 1967 or 1968. That, the hearings officer held, was sufficient to rebut the presumption of continuity.

Petitioner sought review before LUBA. Among other things, petitioner argued that the hearings officer committed two errors: (1) in failing to construe correctly the effect of the presumption created by ORS 215.130(10)(a); and (2) in failing to review the director's decision *de novo*. LUBA concluded that the hearings officer correctly construed the statutory presumption and that, although the hearings officer clearly articulated the wrong standard of review of the director's decision, the thoroughness of the hearings officer's opinion demonstrated that his review effectively was *de novo*. On review, petitioner argues that LUBA erred in its disposition of each of those two assignments of error.

We begin with petitioner's arguments concerning the statutory presumption. ORS 215.130(10)(a) provides:

"For purposes of verification of a [nonconforming] use * * *, a county may adopt procedures that allow an applicant for verification to prove the existence, continuity, nature and extent of the use only for the 10-year period immediately preceding the date of application. Evidence proving the existence, continuity, nature and extent of the use for the 10-year period preceding application creates a rebuttable presumption that the use, as proven, lawfully existed at the time the applicable zoning ordinance or regulation was adopted and has continued uninterrupted until the date of application[.]"

Petitioner argues that, because it is uncontested that she has established the existence, continuity, nature, and extent of

the use of her property for the operation of the go-kart business for the 10-year period preceding her verification application, she is entitled to the statutory rebuttable presumption of continuity. The nature of "rebuttable presumptions," she argues, is such that the burden shifts to the opponent—in this case, the county—to establish by a preponderance of evidence that there was no such continuity. LUBA erred, she concludes, in holding that something less than a preponderance of the evidence is required to rebut the statutory presumption.

The county argues that, whether or not the hearings officer misapplied ORS 215.130(10)(a), LUBA reviews the hearings officer's decision for substantial evidence. According to the county, there clearly is substantial evidence to support the hearings officer's decision in this case and that should end the matter. In any event, the county argues that, although the statute refers to a "rebuttable presumption," all that is required is the production of any "credible evidence" to effect the rebuttal, and the county provided at least that.

At the outset, we note that the county is incorrect in arguing that whatever legal errors that may have occurred during the hearing are irrelevant if the hearings officer's decision is supported by substantial evidence. Substantial evidence review refers to the review of a decision maker's findings of fact. ORS 197.850(9)(c). The decisive issue in this case, however, is not whether the decision maker's findings are supported by evidence but rather whether, in making those findings, the decision maker applied the correct legal standard. ORS 197.850(9)(a).

We turn then to the nature of the presumption imposed by ORS 215.310(10)(a). There are essentially two theories of presumptions. The first, commonly known as the "bursting bubble theory," holds that a presumption may be rebutted by the introduction of *any* evidence tending to show that the presumed fact is not true. *See Wright v. SAIF*, 289 Or 323, 329-30, 613 P2d 755 (1980); *see also* Laird C. Kirkpatrick, *Oregon Evidence*, 71 (3d ed 1996). The second theory holds that, once the rebuttable presumption has been established, it stands until rebutted by a preponderance of

the evidence. Sometimes known as the "Morgan view" of presumptions, the theory derives from the critique of Professor Edmund Morgan, who contended that the bursting bubble theory was "too slight and evanescent." *See Wright,* 289 Or at 330 (quoting Edmund M. Morgan and John MacArthur Maguire, *Looking Backward and Forward at Evidence,* 50 Harv L Rev 909, 913 (1937)); Kirkpatrick, *Oregon Evidence* at 71.

■ ORS 215.130(10)(a) does not specify which theory of presumptions the legislature intended to implicate when it referred to the term "rebuttable presumption." Reference to the context of the enactment, however, makes it clear that, when the legislature uses the term "rebuttable presumption," it refers to the Morgan view of presumptions unless it specifically states otherwise.

OEC 308 provides:

"In civil actions and proceedings, a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence."

The 1981 Legislative Commentary makes clear that, in enacting OEC 308,

"[t]he Legislative Assembly rejected the so-called 'bursting bubble' theory under which a presumption vanishes on the introduction of evidence contrary to the presumed fact, even though the evidence may not be credible."

Legislative Commentary to OEC 308, *reprinted in* Kirkpatrick, *Oregon Evidence* at 71-72. The Commentary described several reasons for the decision, among them that "the considerations of fairness, policy and probability which underlie the creation of presumptions, are not satisfied by giving them any lesser effect." *Id.* at 72. The Commentary concludes with the admonition that "[a]ll presumptions, whether legislatively or judicially created, must be treated in the manner prescribed in this section." *Id.*

The legislature has enacted numerous statutes using the terms "presumption" or "rebuttable presumption" without expressly defining what those terms mean. *See, e.g.,* ORS 25.245(1) (person receiving certain assistance payments

"rebuttably presumed" unable to pay child support); ORS 67.055(4)(d) (rebuttable presumption that person who receives share of business profits is partner); ORS 67.165(2) (rebuttable presumption that partners intend partnership to continue); ORS 87.060(2) (rebuttable presumption that actual costs of labor, equipment, and services provided by lien claimant are reasonable); ORS 260.532(3) (rebuttable presumption that a candidate knows of and consents to publications produced by the candidate's political committee); ORS 539.240(3) (rebuttable presumption of abandonment of water right when claim not registered).

Since the enactment of OEC 308, courts have uniformly concluded that such statutory references refer to the Morgan view of presumptions, that is to say, the presumption stands unless rebutted by a preponderance of the evidence. *See, e.g., Massee and Massee,* 328 Or 195, 204, 970 P2d 1203 (1999) (applying OEC 308 to the presumption of equal contribution provided in ORS 107.105(1)(f) (1997)); *Roach v. Jackson County,* 151 Or App 33, 38, 949 P2d 1227 (1997), *rev den* 326 Or 389 (1998) (applying OEC 308 to presumption in ORS 609.157 that a dog found chasing livestock where freshly damaged livestock is found is presumed to have caused the damage); *Milburn and Milburn,* 98 Or App 668, 672, 780 P2d 775 (1989) (applying OEC 308 to the rebuttable presumption in ORS 109.070(2) that a child born in wedlock is the husband's child).

When the legislature intends to apply a presumption different from the one described in OEC 308, it says so. *See, e.g.,* ORS 41.930 (presumption regarding the truth of matters in copy of original record is "a presumption affecting the burden of producing only"); ORS 508.941(2) (requiring clear and convincing evidence to overcome a presumption in favor of crab permit holder).

Strictly speaking, OEC 308 does not apply to administrative proceedings. OEC 101. Nevertheless, because of its broad applicability, the rule definitely has had an effect on the legislature's use of the term "rebuttable presumption" generally. It is clear from reviewing the other statutes that the term has acquired a well-defined legal meaning, which the courts consistently have endorsed. In that light, it

becomes highly probable that when the legislature used the same term in ORS 215.130(10)(a)—enacted in 1997—it intended the term to mean the same thing that it has come to mean generally since the enactment of OEC 308. Indeed, there is absolutely no evidence in the text or context of the statute that the legislature intended the term "rebuttable presumption" to mean anything other than what it now usually means. *See Gaston v. Parsons*, 318 Or 247, 253-55, 864 P2d 1319 (1994) (if a term has a "well-defined legal meaning" and there is no evidence that the legislature intended to change that meaning, we are to presume that the term has that meaning in the statute); *State v. Holloway*, 138 Or App 260, 267-68, 908 P2d 324 (1995) (fact that legislature uses a term consistently throughout the Oregon Revised Statutes suggests that the legislature intended to adopt the same meaning of the term in statute in dispute). We conclude that LUBA erred in upholding the hearings officer's construction of ORS 215.130(10)(a).

■    We turn to petitioner's argument that LUBA erred in concluding that the hearings officer effectively conducted a *de novo* hearing. The county concedes that, under ORS 215.416(11), the hearings officer was required to review the director's decision *de novo*. It further concedes that there is language in the hearings officer's order making clear that he was not reviewing on a *de novo* basis and was, instead, according the director "considerable deference." The county nevertheless concludes that, as LUBA also concluded, the hearings officer's decision was sufficiently thorough to constitute effective *de novo* review. However thorough the hearings officer's decision was, the fact remains that he applied an incorrect legal standard to the decision. By its own terms, the hearings officer's decision gave "considerable deference" to the director's findings. That is not *de novo* review. *See SAIF v. Cessnun*, 161 Or App 367, 375, 984 P2d 894 (1999) (when administrative agency applied incorrect legal standard, proper remedy is to remand for reconsideration in light of proper standard).

Reversed and remanded with instructions to remand to Clackamas County.