Argued and submitted February 1, affirmed August 28, petition for review denied
December 17, 2002 (335 Or 114)

## WIARD MEMORIAL PARK DISTRICT,
*Respondent,*

*v.*

## WIARD COMMUNITY POOL, INC.,
an Oregon corporation,
aka Harry Wiard Swimming Pool, Inc.,
an Oregon corporation,
*Appellant.*

9802641CV; A109789

52 P3d 1080

Joel S. DeVore argued the cause for appellant. With him on the briefs was Luvaas, Cobb, Richards & Fraser, P. C.

Robert S. Hamilton argued the cause for respondent. With him on the brief was deSchweinitz & Hamilton.

Before Armstrong, Presiding Judge, and Landau and Kistler, Judges.

KISTLER, J.

## KISTLER, J.

The trial court granted plaintiff's petition to condemn defendant's property. On appeal, defendant argues that plaintiff abused its discretion when it determined that taking defendant's property was most compatible with the greatest public good and the least private injury. We affirm.

Plaintiff is the Wiard Memorial Park District, which is located in Klamath Falls. It is a public entity responsible for maintaining several acres of parks in the area, the largest of which is Wiard Park. Defendant is the Wiard Community Pool, Inc., which owns a parcel of land next to Wiard Park. Defendant is privately owned and has no connection, other than geographical, with plaintiff. Defendant acquired the property with the intention of building a pool.[1] It raised enough money to pour the concrete for the pool's shell but then ran out of funds. After sitting empty for several years, the shell was filled with gravel approximately 15 years ago. No construction has taken place on defendant's property since then.

Plaintiff became interested in acquiring defendant's property in the 1990s. Attendance at the park was increasing, and plaintiff's board members foresaw a need for a larger storage area, children's play equipment, and covered picnic areas. Discussions with defendant concerning the acquisition of the property proved unsuccessful. Defendant refused to sell the property because it was planning to build an indoor therapeutic pool, and plaintiff decided that it was necessary to exercise its power of eminent domain to take defendant's property. On May 14, 1997, plaintiff passed Resolution 97-001, declaring that it was necessary to take defendant's property

> "for the purposes of providing park facilities to serve the District, for the health, safety, benefit and general welfare of the public [and] to locate, construct, operate and maintain, park facilities adjacent to the existing Wiard Memorial Park[.]"

---

[1] Harry Wiard acquired the property and then deeded it to defendant in 1967.

After defendant rejected plaintiff's written offer to purchase the property, plaintiff filed a complaint, asking the court to condemn defendant's property and vest title in plaintiff.

At trial, defendant acknowledged that, under ORS 35.235(2), plaintiff's resolution was "presumptive evidence" that its proposed use was the most compatible with the greatest public good and the least private injury.[2] It argued, however, that it could rebut the presumption by showing that plaintiff had abused its discretion. In response, plaintiff argued that defendant's evidence was insufficient to overcome the presumption. On that issue, witnesses for plaintiff testified about the uses that plaintiff's board members envisioned, from increased storage to a new covered picnic area. They testified that current storage space was inadequate and that defendant's property was the most convenient for that need because it was next to the park. Additional testimony revealed that the public's use of the park would continue to increase and that plaintiff needed to acquire the property to meet the increased use.

Defendant's witnesses testified about the need for a therapeutic pool in the community and that defendant's property was centrally located. An architect testified about the designs that he had created for a therapeutic pool on defendant's property. However, additional testimony revealed mixed opinions about whether such a structure was even possible, given the property's small size. More specifically, there was disagreement about whether the lot was wide enough to provide sufficient setbacks as required by the city code and sufficient parking. Even if it were possible to build an indoor pool on the site, the cost of constructing it would run from $1.2 to $1.8 million. At the time of trial, defendant had raised approximately $10,000 towards that goal.

---

[2] ORS 35.235(2) provides:

"The resolution or ordinance of a public condemner is presumptive evidence of the public necessity of the proposed use, that the property is necessary therefor and that the proposed use, improvement or project is planned or located in a manner which will be most compatible with the greatest public good and the least private injury."

After considering the evidence, the trial court found that, although there was a need for a therapeutic pool in the area, the property had remained essentially unimproved for nearly 30 years. The court also found that defendant had not consistently sought to raise any funds to build the pool until plaintiff showed an interest in the property. The trial court found that plaintiff, in contrast, had both the money and the ability to put the property to public use immediately and that the park was experiencing heavy use. Although plaintiff had not decided whether to use the property for storage, to expand the children's playground, or as an additional covered picnic area, it intended to "finalize" its plan after the litigation ended. Given those facts, the court determined that plaintiff had not acted in bad faith or abused its discretion. The court also "f[ound] that [plaintiff] met its burden of proof on the issue of whether the taking would be most compatible with the greatest public good and the least private injury."

On appeal, defendant renews its argument that plaintiff abused its discretion in determining that its proposed use was the most compatible with the greatest public good and the least private injury.[3] We begin with our standard of review. Both parties agree that, under ORS 35.235(2), we review plaintiff's decision for abuse of discretion, but they disagree about what that standard means. Defendant argues for a searching review of plaintiff's decision while plaintiff contends that our standard of review is more limited. Plaintiff argues that we can find an abuse of discretion only if the record reveals a complete "absence of 'any economic justification' " for its decision. *See Emerald PUD v. Pacificorp*, 100 Or App 79, 86, 784 P2d 1112, *rev den* 310 Or 121 (1990).

The issue on which the parties agree—that we review a public condemner's decision for abuse of discretion

---

[3] Defendant also argues that plaintiff failed to identify the "proposed use" for the land in violation of ORS 35.235(2). Defendant notes that plaintiff had not yet adopted a "formalized plan" for the additional land and was considering using the land to meet one of three different park needs. Plaintiff's resolution stated that it needed the additional land "for the purposes of providing park facilities to serve the District" and that it planned to "locate, construct, operate and maintain, park facilities adjacent to the existing Wiard Memorial Park[.]" The resolution sufficiently identifies the proposed use for the land—to provide additional facilities to serve the existing park use.

under ORS 35.235(2)—is one that neither the Supreme Court nor we have resolved. The Supreme Court observed in *State ex rel City of Eugene v. Woodrich*, 295 Or 123, 132-33, 665 P2d 333 (1983), that

"[s]ome decisions of this court, antedating the enactment of [ORS 35.235], * * * recited the 'fraud, bad faith, or abuse of discretion' formula as a limit on judicial review of a condemner's finding that it was necessary to take specific property for a public use. *See Moore Mill & Lumber Co. v. Foster*, 216 Or 204, 236-237, 336 P2d 39, 337 P2d 810 (1959), *Port of Umatilla v. Richmond*, 212 Or 596, 620-627, 321 P2d 338 (1958), *City of Eugene v. Johnson*, 183 Or 421, 426-429, 192 P2d 251 (1948). In the act, ORS 35.235 provides statutory 'presumptions' that the property is necessary for a public use and that this use 'is planned or located in a manner which will be most compatible with the greatest public good and the least private injury.' The section specifies pretrial determination of challenges to this presumption only as to private condemners, ORS 35.235(4). We need not here examine whether this makes the 'presumptive evidence' in public takings conclusive or whether the old formula was meant to survive, because the focus of the present proceeding has shifted [to a different issue which made it unnecessary for the court to resolve the appropriate standard of review]."

Seven years later, we rejected the suggestion in *Woodrich* that a public condemner's determination was conclusive, but we did not resolve our scope of review beyond that. *Emerald PUD*, 100 Or App at 84 n 4. Rather, we assumed without deciding that nothing less than an abuse of discretion would overcome the statutory presumption. *Id.* Because neither *Woodrich* nor *Emerald* resolves our standard of review, we look initially to the text and context of ORS 35.235(2) to determine the legislature's intent. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993).

In this case, we begin with the statute's context because it provides perspective on the text. *See Plotkin v. Washington County*, 165 Or App 246, 250, 997 P2d 226 (2000). The legislature adopted ORS 35.235(2) in 1971 to provide a uniform procedure for condemning property. *See Powder Valley Water v. Hart Estate Investment Co.*, 146 Or

App 327, 331, 932 P2d 101 (1997).[4] Before then, the authority to condemn property was dispersed through various statutes.[5] The terms of those statutes were not always consistent, however. For instance, the Port of Umatilla was authorized to condemn property that was "necessary or convenient" in carrying out its work. *See former* ORS 777.115 (*repealed by* Or Laws 1971, ch 728, § 16). In contrast, the State Highway Commission had the power to create a resolution that was "conclusive evidence of the public necessity of such proposed public improvement or project that such real property, or interest therein, is necessary therefor and that the proposed improvement or project is planned or located in a manner which will be most compatible with the greatest public good and the least private injury." *Former* ORS 366.370(1), *repealed by* Or Laws 1971, ch 741, § 38.

Although the terms of these statutes varied, the Supreme Court uniformly recognized that a public condemner's decision to take property was a legislative decision that was subject to a deferential standard of review. *Port of Umatilla v. Richmond*, 212 Or 596, 622, 321 P2d 338 (1958); *Highway Comm. v. Pac. Shore Land Co.*, 201 Or 142, 155-56, 269 P2d 512 (1954); *City of Eugene v. Johnson*, 183 Or 421, 426, 192 P2d 251 (1948). In *Johnson*, the court reaffirmed the settled rule that "the necessity, propriety, or expediency of appropriating property for public use, the amount and location of the property to be taken, and its suitableness for the proposed use are all political or legislative questions." 183 Or at 426. The court explained that those legislative decisions

---

[4] The 1971 statute repealed and replaced numerous statutes providing authority to condemn property, *see* Or Laws 1971, ch 741, but did not replace all previous statutes authorizing condemnation, *see* Or Laws 1971, ch 728, § 16 (regulating ports).

[5] The context for ORS 35.235(2) includes the statutes that it replaced and the decisions interpreting those statutes. *See Dockins v. State Farm Ins. Co.*, 329 Or 20, 29, 985 P2d 796 (1999). We note that ORS 35.235(3) and (4) set out related but different rules for private condemners. They provide that a private condemner's decision to take land creates a "disputable presumption," the validity of which shall be determined in a summary hearing before trial. ORS 35.235(3) and (4). Because those subsections were added two years after the legislature enacted ORS 35.235(2), *see* Or Laws 1973, ch 579, § 1, any significance to be attributed to the legislature's use of the phrase "disputable presumption" in ORS 35.235(3) and "presumptive evidence" in ORS 35.235(2) is not context for the purpose of interpreting ORS 35.235(2). *See Stull v. Hoke*, 326 Or 72, 79-80, 948 P2d 722 (1997).

are "final and not subject to review by the courts" unless the person opposing the decision can show "fraud, bad faith or [an] abuse of discretion." *Id.*

Although the court has been consistent in articulating the general standard, it has used differing terms to describe the appropriate level of deference. In *Johnson*, for example, the court explained that the city's resolution approving a taking "established a prima facie case of the necessity for taking the entire tract." 183 Or at 428. Later in the same opinion, the court explained that the city's resolution was " 'conclusive of [the] facts recited therein, and the same may not be disputed in the absence of fraud, bad faith, or an abuse of discretion.' " *Id.* at 430 (quoting *People v. Milton*, 35 Cal App 2d 549, 96 P2d 159 (1939)). At first blush, the two standards that the court cited appear inconsistent; a *prima facie* case may be rebutted while conclusive evidence ordinarily may not. The court's opinion, however, makes clear that it did not use the term "conclusive" in its usual sense. Rather, as the court explained, the conclusive facts established by a public condemner's resolution may be disputed by showing fraud, bad faith, or an abuse of discretion. *Id.* at 430. As the court explained the standard of review before the legislature enacted ORS 35.255(2), a public condemner's resolution was only presumptively correct.

With that context in mind, we turn to the text of ORS 35.235(2). As noted, that subsection provides:

> "The resolution or ordinance of a public condemner is presumptive evidence of the public necessity of the proposed use, that the property is necessary therefor and that the proposed use, improvement or project is planned or located in a manner which will be most compatible with the greatest public good and the least private injury."

The phrase "presumptive evidence" is not a term of art, nor is its meaning self-evident. Considered in context, the phrase could be interpreted in one of two ways. First, the phrase could be intended to reflect the Supreme Court's uniform rule that a public condemner's decision on legislative matters is entitled to deference unless it is rebutted by a showing of fraud, bad faith, or an abuse of discretion. Second, the phrase

could reflect the legislature's decision that the public condemner's resolution creates a rebuttable presumption: the presumption either shifts the burden of proof or vanishes once contrary evidence is introduced. *See Wright v. SAIF*, 289 Or 323, 329-31, 613 P2d 755 (1980) (describing two types of rebuttable presumptions); *Lawrence v. Clackamas County*, 164 Or App 462, 466-67, 992 P2d 933 (1999) (same).

Because the text and context permit either interpretation, we turn to the legislative history. What is now ORS 35.235 was first presented to the legislature in 1969. The Oregon State Bar sponsored the bill. William Juza appeared on behalf of the bar and explained that the bill was intended to bring uniformity to the area of condemnation; it was not intended "to make any changes in the present law except where uniformity dictated." Minutes, House Subcommittee on Judiciary, HB 1519, March 13, 1969, p 1. As initially proposed, what is now ORS 35.235(2) provided:

> "The resolution or ordinance of a public condemner is *conclusive* evidence of the public necessity of the proposed use, that the property is necessary therefor and that the proposed use, improvement or project is planned or located in a manner which will be most compatible with the greatest public good and the least private injury."

Bill File, House Committee on Judiciary, HB 1519 (February 17, 1969, draft) (emphasis added). On April 3, 1969, an unidentified person proposed a series of amendments, one of which was to substitute the word "presumptive" for the word "conclusive." Bill File, House Committee on Judiciary, HB 1519 (April 3, 1969, amendments). The proposed amendments were considered on April 14, 1969, and "[a]fter discussion" adopted unanimously. Minutes, House Committee on Judiciary, HB 1519, April 14, 1969, p 3. No other legislative history is available to explain the change in phrasing.[6] The House voted in favor of the bill, as amended, and sent it to the Senate, where it was tabled. *See* Minutes, House Committee on Judiciary, HB 1456, March 3, 1971, p 1 (statement of Wayne Cordes) (explaining the history of the 1969 bill).

---

[6] The tapes of the committee hearings are no longer accessible.

In 1971, the Oregon State Bar resubmitted the 1969 bill, as amended in the House, to the legislature. Minutes, House Committee on Judiciary, HB 1456, March 3, 1971, p 1 (statement of Wayne Cordes). The 1971 bill provided, consistently with the 1969 amendments, that a public condemner's resolution is "presumptive evidence" of public necessity and other legislative determinations. The legislature adopted the 1971 bill without discussing either the role that courts would play under ORS 35.235(2) or the meaning of the phrase "presumptive evidence."

The legislative history of ORS 35.235(2) reveals three propositions. First, the sponsors of the bill did not intend to make substantive changes in the existing law. Second, a conscious decision was made in 1969 to replace the phrase "conclusive evidence" with the phrase "presumptive evidence." Third, there is no recorded explanation for that change. The legislative history thus does not clearly reveal whether the phrase "presumptive evidence" was intended to codify or depart from the Supreme Court's earlier cases.[7]

■ ■    Because the legislature's intent remains unclear after considering the text, context, and the legislative history of ORS 35.235(2), we look to general principles of statutory construction. *See PGE*, 317 Or at 612. One rule, in choosing between competing interpretations, is to consider the interpretation that furthers our understanding of the legislature's

---

[7] As noted, the 1973 Legislature amended ORS 35.235 to provide that a private condemner's decision to file a condemnation action creates a "disputable presumption" of public necessity and other matters. Although the 1973 Legislature's debates do not bear on the 1971 Legislature's intent, the 1973 Legislature considered whether "presumptive evidence" differs from a "disputable presumption." The House Judiciary Committee initially deleted the phrase "presumptive evidence" in ORS 35.235(2) and replaced it with "disputable presumption." *See* Minutes, House Judiciary Committee, HB 2615, May 17, 1973, p 7. Under the House's version, the same standard would apply to both public and private condemners. The Senate Judiciary Committee, however, debated at some length whether the phrase "presumptive evidence" differed from the phrase "disputable presumption" and whether different standards should apply to public and private condemners. *See* Minutes, Senate Committee on Judiciary, HB 2615, June 8, 1973, pp 2-5. Initially, the Senate agreed to leave the phrase "disputable presumption" in ORS 35.235(2), *see id.*, but later restored the original phrase "presumptive evidence," Minutes, Senate Committee on Judiciary, HB 2615, June 25, 1973, p 14-15. The House agreed to the change, and ORS 35.235, as amended in 1973, distinguishes between the effect to be given a resolution adopted by a public condemner and a private condemner's decision to file a condemnation action.

goals. *See Carrigan v. State Farm Mutual Auto. Ins. Co.*, 326 Or 97, 104, 949 P2d 705 (1997). Here, we start from the proposition, repeatedly stated in the Supreme Court's cases, that the decision whether it is necessary or appropriate to exercise the power of eminent domain is an inherently legislative one. *See, e.g., Port of Umatilla*, 212 Or at 621. The Supreme Court has consistently recognized that courts are ill-suited to weigh the policy choices that inform those legislative decisions and has deferred to the pubic condemner's resolution of them. The legislature could, of course, delegate its authority to the courts, giving them a free hand to substitute their policy choice for the legislature's. But, without a clearer statement of legislative intent than is present here, we are hesitant to conclude that the legislature intended to depart from the long-standing allocation of authority between the legislative and judicial branches.[8] Having considered the text, context, and legislative history of ORS 35.235, we hold that a public condemner's determination that a proposed project is most compatible with the greatest public good and the least private injury is presumed valid in the absence of fraud, bad faith, or an abuse of discretion.

■ We turn to the question whether plaintiff abused its discretion in deciding that its proposed use "is planned or located in a manner which will be most compatible with the greatest public good and the least private injury." *See* ORS 35.235(2). In this case, plaintiff identified an immediate need for additional land on which to expand and operate the park facilities. Defendant's land is next to Wiard Memorial Park. It is presently not being used for any purpose, and defendant's proposed future use as a therapeutic pool is speculative at best. There is no evidence that defendant is in any position to raise the funds necessary to construct the pool, much less the funds to maintain and operate it after it is constructed. We cannot say that plaintiff abused its discretion in

---

[8] Here, the only evidence to suggest that the legislature intended to depart from the Supreme Court's consistent decisions is the substitution of the term "presumptive" for "conclusive." That change, however, could simply reflect the legislature's recognition that a public condemner's resolution had never been given conclusive effect but had instead been only presumptive evidence, which could be overcome in limited circumstances.

deciding that its proposed use is located or planned in a manner that is most compatible with the greatest public good and the least private injury. *See Port of Umatilla*, 212 Or at 625; *Emerald PUD*, 100 Or App at 84.

Affirmed.